# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2007

Charles R. Fulbruge III
Clerk

No. 06-41492

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RAFAEL FLORES-HERNANDEZ, also known as Enrique Gaytan-Roman

Defendant-Appellant

Appeal from the United States District Court for the
Southern District of Texas
(No. 1:06-CR-372)

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Rafael Flores-Hernandez appeals the district court's imposition of a sixteen-level "crime of violence" sentence enhancement under § 2L1.2(b)(1)(A)(ii). Flores-Hernandez pleaded guilty to illegal reentry after deportation following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). Flores-Hernandez contends that the district erred in applying the sentence enhancement, because (1) his prior robbery conviction does not qualify as a crime of violence, and (2) § 1326(b) is unconstitutional. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Facts & Proceedings

In 2001, Flores-Hernandez was convicted under the name Enrique Gayton for "strong-arm robbery" in violation of Florida Statute § 812.13. He was sentenced to "18.9 months" in custody of the Florida Department of Corrections. On March 24, 2005, Flores-Hernandez was deported to Mexico.

On May 2, 2006, Flores-Hernandez was found in Brownsville, Texas. He admitted to border patrol agents that he is a Mexican citizen who had illegally reentered the United States by swimming across the Rio Grande. Flores-Hernandez subsequently pleaded guilty before a magistrate judge to a one-count indictment charging him with being an alien found illegally in the United States after previous deportation, subsequent to a conviction for an aggravated felony. There was no plea agreement. Pursuant to U.S.S.G. § 2L1.2(a), Flores-Hernandez was assigned a base offense level of eight. The PSR recommended a sixteen-level increase because Flores-Hernandez had been deported after a conviction for a "crime of violence."

Flores-Hernandez objected to the sixteen-level increase, asserting that his prior robbery conviction could not be considered a crime of violence. He also objected to the constitutionality of § 1326(b). At the sentencing hearing, the district court overruled both objections. The court sentenced Flores-Hernandez to 80 months in prison, followed by three years of supervised release. Flores-Hernandez timely filed a notice of appeal.

## II. Analysis

### 1. Standard of Review

We review de novo the district court's interpretation and application of the federal sentencing guidelines.[1] We accept the district court's findings of fact

---

[1] United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006).

unless clearly erroneous.[2]  Under United States v. Booker, we ultimately review the sentence to determine whether it is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).[3]

2. Crime of Violence

Under U.S.S.G. § 2L1.2(b)(1)(A)(ii), the offense level for illegal reentry is increased by sixteen levels if the defendant was previously convicted of a "crime of violence."  A crime of violence is either: (1) any specified enumerated offense, or (2) "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[4]  The list of enumerated offenses includes robbery.[5]

As the enhancement provision does not define robbery, we must first assign the term its generic and contemporary meaning; that is, its ordinary and common meaning.[6]  This meaning is uniform and independent of the state's own criminal code designation.[7]  Sources of generic, contemporary meaning include the Model Penal Code ("MPC"), federal and state laws, dictionaries, and treatises.[8]  We take a common sense approach and recognize that categorical offense designations like "robbery" are usually intended "'to capture all offenses of a certain level of seriousness.'"[9]

---

[2] Id.

[3] 543 U.S. 220, 260-61 (2005); Smith, 440 F.3d at 706.

[4] U.S.S.G. § 2L1.2, comment (n.(1)(B)(iii)).

[5] Id.

[6] United States v. Santiesteban-Hernandez, 469 F.3d 376, 378 (5th Cir. 2006).

[7] Id.

[8] Id. at 379.

[9] Id. (quoting Taylor v. United States, 495 U.S. 575, 590 (1990)).

After determining the generic, contemporary meaning of the term, we must then compare it to the statute governing the prior conviction.[10] We follow a categorical approach to evaluating the correspondence between generic contemporary meaning and the statutory definition of the underlying offense.[11] If the statute governing the prior conviction follows the generic definition with only minor variations, or is narrower than the generic crime, the sentence enhancement may be applied.[12] The elements of the offense need only "substantially correspond" to the generic definition of the enumerated offense to pass muster under the categorical approach.[13] In making this determination, we examine the elements of the prior offense of conviction, not the defendant's underlying conduct.[14]

When we address the sources for generic contemporary meaning, we find that, even though states differ as to the precise definition of robbery, "the generic form of robbery 'may be thought of as aggravated larceny,' containing at least the elements of 'misappropriation of property under circumstances involving [immediate] danger to the person.'"[15] It is the element of immediate danger that makes robbery "'deserving of greater punishment than that provided for larceny' and extortion ."[16]

---

[10] Id.

[11] United States v. Torres-Diaz, 438 F.3d 529, 536 (5th Cir. 2006).

[12] Santeisteban-Hernandez, 469 F.3d at 379.

[13] Taylor, 495 U.S. at 602.

[14] Torres-Diaz, 438 F.3d at 536.

[15] Santiesteban-Hernandez, 469 F.3d at 380 (quoting Wayne R. LaFave, Substantive Criminal Law § 20.3 (d)(2) (2d ed. 2003)).

[16] Id.

According to the MPC, a person commits robbery if, in the course of committing a theft, he:

(a) inflicts serious bodily injury upon another; or
(b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or
(c) commits or threatens immediately to commit any felony of the first or second degree[17]

Under the MPC, "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."[18]

Black's Law Dictionary defines "robbery" as: "the illegal taking of property from the person of another, or in the person's presence, by violence or intimidation; aggravated larceny."[19] Webster's defines "robbery" as "the act or practice of robbing," and "larceny from the person or presence of another by violence or threat."[20] To "rob" is defined as "to take something away from another by force" or "to remove valuables without right from (a place)."[21]

At the time of Flores-Hernandez's conviction in 2000, the Florida statute in question defined the offense of "robbery" as follows:

(1) the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.[22]

---

[17] Model Penal Code § 222.1.

[18] Id.

[19] Black's Law Dictionary 1354 (8th ed. 2004).

[20] Webster's New Collegiate Dictionary (1975).

[21] Id.

[22] Fla. Stat. § 812.13(1) (2001).

"The fear contemplated by the statute is the 'fear or death or great bodily harm.'"[23]

Flores-Hernandez argues that the Florida statute is overly broad and therefore outside the generic definition of robbery, because a defendant can be convicted without the intentional use or threat of force. Flores-Hernandez mistakenly relies on State v. Hawkins to support his interpretation of the statute.[24] In Hawkins, the Florida appellate court concluded that there was sufficient evidence to support a robbery conviction when the defendant had stolen an unoccupied truck in which the keys had been left in the ignition, and the defendant had continued driving away when the victim attempted to resist the taking by hanging on the side of the vehicle.[25] According to Flores-Hernandez, Hawkins demonstrates that a defendant is not required to use force purposely to be convicted under the Florida statute. Contrary to this argument, however, the court in Hawkins held that the defendant's act of driving away, while the victim was hanging onto the side of the car, "was an act of force intended, in part, to overcome the resistence to the taking."[26] Therefore, this case does not support the contention that a defendant may be convicted under the Florida statute without purposefully using force or putting the defendant in fear.

Although the Florida statute does not specifically state that the defendant must intentionally use force or place the victim in fear of bodily harm, the statute does require that the defendant use force or fear as a means of acquiring

---

[23] Magnotti v. State, 842 So.2d 963, 965 (Fla. Dist. Ct. App. 2003) (quoting Smithson v. State, 689 So.2d 1226, 1228 (Fla. Dist. Ct. App. 1997)).

[24] 790 So.2d 492 (Fla. Dist. Ct. App. 2001).

[25] Id. at 495.

[26] Id.

the property. Thus, the Florida statute contains the essential elements of robbery–the misappropriation of property involving danger to a person. That the Florida statute does not use the words purposefully or intentionally is not sufficient to keep the statute outside of the generic definition of robbery. The district court did not err by enhancing Flores-Hernandez's sentence for his prior conviction under the Florida law of robbery.

3. Apprendi Challenge

Flores-Hernandez also contends that the "felony" and "aggravated felony" provisions of § 1326(b) are unconstitutional in light of Apprendi.[27] He acknowledges that his argument is foreclosed by Almendarez-Torres v. United States, but raises it to preserve it for further review.[28] As we have repeatedly held, Almendarez-Torres remains binding despite Apprendi.[29] Accordingly, Flores-Hernandez's argument that § 1326 is unconstitutional in light of Apprendi fails.

## III. Conclusion

Flores-Hernandez's guilty plea conviction and the sentence imposed are AFFIRMED.

---

[27] 530 U.S. 466 (2000).

[28] 523 U.S. 224, 235 (1998).

[29] United States v. Garza-Lopez, 410 F.3d 268, 276 (5th Cir. 2005).